IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROGER HICKS,                )
                            )
         Plaintiff,         )
                            )
    v.                      )    No. 04 C 5121
                            )    Paul E. Plunkett, Senior Judge
ADVANCE PRESORT SERVICE,    )
                            )
         Defendant.         )

## MEMORANDUM OPINION AND ORDER

Roger Hicks ("Plaintiff") has filed a lawsuit against his former employer, Advance Presort Service ("APS" or "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* in Count I and a state law claim of breach of contract in Count II. Defendant has moved to dismiss Count II of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that because Hicks was an "at-will" employee, no contract existed and therefore no breach occurred. Based on the foregoing, we grant APS's motion and dismiss Count II of the complaint.

### Facts

According to his first amended complaint, Hicks worked as an APS electronic mechanical technician for just under three months, from December 2002 to March 2003. He was discharged with a letter that read, "you are non communicative with supervisors, non responsive, trouble with

-1-

authority and you has a noticeable attitude towards others. You also have the inability to follow simple instructions given you by supervisors." (Pl.'s Am. Compl. ¶ 21.) Yet Hicks claims he was never disciplined for any of these reasons. The only discipline he ever received from APS was for calling in to report that he would miss his shift after the shift had already begun.

On his first day on the job, December 12, 2002, Hicks was given an employee handbook. Among the information contained in the handbook was a list of various kinds of misconduct that would lead to termination. The handbook outlines a system of progressive discipline that included verbal warnings, written warnings, suspension, and termination, for offenses ranging from absenteeism to violations of health or hygiene rules. Hicks now claims that his contract has been breached because the progressive disciplinary procedures were not followed prior to his termination.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

Defendant argues that Plaintiff's breach of contract claim must be dismissed because the APS employee handbook does not constitute a contract. Under Illinois law, employer-employee relationships are presumed to be "at-will." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 363 (7th Cir.

2005). The employee bears the burden of overcoming this presumption by showing that a contract for continued employment was formed. *Id.* An employee handbook can only be considered a contract for continued employment where the classic requirements of contract formation are present—offer, acceptance, and consideration. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 390 (Ill.1987). An offer is created where "the language of the policy statement [contains] a promise clear enough that an employee would reasonably believe that an offer has been made." *Id.* Acceptance occurs where the employee "reasonably believes it to be an offer" and commences or continues to work. *Id.* The employee's continued work constitutes consideration. *Id.* Here, the parties disagree as to whether APS's handbook can be construed as an offer.

At the outset, APS claims that the handbook contained a disclaimer just above the signature line that clearly stated that APS did not intend the handbook to be a contract and does not constitute one. There is some dispute between the parties as to whether the disclaimer was part of the handbook. Hicks has suggested that he may never have seen or signed the disclaimer,[1] a factor that could potentially affect our ruling on the issue. We agree that the issue would be better resolved after some discovery. Alas, such a step will not be needed. Even if the disclaimer is not valid, the language of the remaining handbook does not create contractual obligations between the parties.

In *Duldulao*, the Illinois Supreme Court found that a contract existed where a handbook dictated that "permanent employees '*are never* dismissed without prior written admonitions and/ or

---

[1] Hicks has provided a rather cryptic account of when he allegedly received and signed the document. Plaintiff tells us that the form was taken away and retained by APS after Hicks allegedly signed it, if it was given to Hicks at all. The copy of the handbook attached to his complaint does not include the form. Defendant has attached the form to its motion to dismiss, but has shed no light on the circumstances surrounding its alleged signing.

-3-

investigation that has been properly documented,' and that 'three warning notices within a twelve-month period *are required* before an employee is dismissed, except in the case of immediate dismissal." 505 N.E. 2d at 318. The court found that the mandatory nature of the language created an enforceable contractual right to the outlined disciplinary system. Other Illinois courts have consistently found that this positive and mandatory language is required to find an enforceable contractual right to progressive discipline. *See Doe v. First Nat'l Bank*, 865 F.2d 864, 872 (7th Cir.1989) (listing cases). Language that "does not guarantee that the formal levels of progressive discipline will be followed in all cases and without exception[,] . . . . permitting an employer to 'jump the queue[,]' is 'too loose and vague to confer a legally enforceable right' to progressive discipline." *St. Peters v. Shell Oil Co.*, 77 F.3d 184, 188 (7th Cir.1996) (quoting *Campbell v. City of Champaign*, 940 F.2d 1111, 1112–13 (7th Cir.1991)).

Here, the APS handbook uses permissive language in outlining its progressive discipline scheme. The handbook states that when the "standards of behavior" are violated, "corrective action *may* be taken." (Pl.'s Am. Compl., Ex. C, at 14.) (Emphasis added.) The next paragraph says, "The level of corrective action depends on the nature and frequency of the offense. This action *may* range from verbal warning(s), to written warning(s), to suspension from work and to immediate termination." (*Id.*) (Emphasis added.) Hicks has pointed to no language in the handbook that affirmatively states that the progressive discipline system is required before termination. Thus, we find that no such contractual obligation existed.

Moreover, the handbook creates many opportunities for the employer to "jump the queue" and immediately terminate employees without following the formal levels of a progressive discipline system. The handbook lists numerous workplace offenses that will result in immediate termination,

such as smoking in a non-designated area or eating in the work areas. APS has even carved out an umbrella exception, reserving the right to terminate an employee immediately where "an employee engages in behavior that APS considers detrimental to the interests of APS." This language affirms that APS reserved the right to terminate an employee for any reason it deemed necessary, suggesting its intent to establish an "at-will" relationship with its employees. Therefore, again, we find that the APS handbook cannot be read as an offer of continued employment.

## Conclusion

Based on the foregoing, Defendant's motion to dismiss is granted. Count II of the complaint is dismissed with prejudice.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: JUL 2 1 2005